J-S38016-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE: E.D. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: L.D., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1871 EDA 2022 |

Appeal from the Decree Entered June 16, 2022
In the Court of Common Pleas of Wayne County
Civil Division at 18-AD-2022

BEFORE:  KUNSELMAN, J., MURRAY, J., and SULLIVAN, J.

MEMORANDUM BY MURRAY, J.:                    **FILED NOVEMBER 29, 2022**

L.D. (Father) appeals from the decree involuntarily terminating his parental rights to E.D. (Child).[1]  In addition, Father's counsel (Counsel), seeks to withdraw from representation pursuant to ***Anders v. California***, 386 U.S. 738 (1967), and ***Commonwealth v. Santiago***, 978 A.2d 349 (Pa. 2009).[2] Upon review, we grant Counsel's petition, and affirm the termination decree.

Child was born in February 2019.  On December 18, 2020, Wayne County Children & Youth Services (WCCYS) became involved with the family at the request of the Pennsylvania State Police, who reported Father and

---

[1] The court also terminated the parental rights of C.F. (Mother), who has appealed at 1872 EDA 2022.

[2] ***Anders*** principles apply to appeals involving termination of parental rights.  ***See In re X.J.***, 105 A.3d 1, 3 (Pa. Super. 2014).

Mother's suspected drug abuse. N.T., 6/7/22, at 4; *see also* Exhibit 1 (Permanency Plan, 1/4/21, at 1). The WCCYS caseworker, Sarah Mooney, testified that Father

> appeared impaired and was unable to care for the child. [Mother] was not present at the residence[.] …
>
> The agency did try to case plan with [Father] at the home and [Mother] over the phone to avoid protective custody, however, both parents were very combative and stated they did not want [Child] and to place [her], or to place [Child] in foster care.

*Id.* at 4.

The trial court adjudicated Child dependent on December 28, 2020. WCCYS established family service plan goals for Father of cooperating with the agency, maintaining sobriety, addressing his "mental health needs," attending anger management classes, providing a substance-free home for Child, and meeting Child's basic needs. *Id.* at 43-45.

Ms. Mooney testified that initially Father "was not cooperative … would not answer phone calls, or when he would answer phone calls, we could not understand anything he was saying." *Id.* at 10. Because Father "was not cooperative with the agency or attending any visitation or it was very difficult to get a hold of him, we sent [Father's family service plan] to him." *Id.* at 11. Father "was arrested and incarcerated" in Sullivan County on March 15, 2021. *Id.* at 15. Prior to being incarcerated, Father was offered 11 visits, but "attended only one of those visits, so he had missed 10 of them." *Id.*

Father was in the Sullivan County Jail from March 15 – December 15, 2021. *Id.* He did not have visitation during that time because the jail did not offer virtual visits. *Id.* When Father was moved to the Pike County Correctional Facility on December 15, 2021, he missed 4 of "6 or 7" visits, "however it's unclear whether it was the fault of the prison or if it was [Father's] doing." *Id.* at 16, 58.

Child's placement experienced some "twists and turns." *Id.* at 5. For example, Child was returned to Mother on October 15, 2021, but placed back with her foster parents a few weeks later, on November 1, 2021, after Mother tested positive for methamphetamine. *Id.* at 5-6. WCCYS also attempted kinship care. Child was placed with her maternal grandparents, although maternal grandmother was not permitted to be alone with Child. The placement was unsuccessful, and Child was removed from maternal grandparents' care a few months after placement. *Id.* at 6-7; *see also* Exhibit 1 (Permanency Plan, 1/4/21, at 1 (stating maternal grandparents "failed drug screens, [maternal grandfather] had a criminal record and [maternal grandmother] has a PFA against someone in NJ.")). Child was placed with her foster parents three times and has remained with them since November 2021. *Id.* at 8.

The trial court conducted permanency review hearings and issued orders on January 4, 2021, October 12, 2021, November 1, 2021, and February 8, 2022. On February 8, 2022, the trial court "found no compliance and minimal

progress with the permanency plan by Father." Opinion and Decree, 6/16/22, at 2. On April 11, 2022, WCCYS petitioned for termination of Father's parental rights. The trial court held a hearing on June 7, 2022. At that time, Child was three years old and had been in placement for 16 months. N.T., 6/7/22, at 47, 122.

In addition to Ms. Mooney, WCCYS presented testimony from a licensed psychologist, Dr. Brittney Tunilo. WCCYS sought to introduce Dr. Tunilo's testimony "specifically as it regards [Dr. Tunilo's] bonding evaluation" of Mother and Child. *Id.* at 78. The parties stipulated to Dr. Tunilo being an expert in forensic psychology. *Id.*

Father testified in opposition to termination. He testified by Zoom because he was incarcerated in Pike County. *See* N.T., 6/7/22, at 3, 113. Father stated he had accepted a plea for a misdemeanor and was awaiting sentencing; however, he also stated he had "pending charges from 2016, which … is scheduled for trial for the beginning of July." *Id.*

Father claimed he had cooperated with WCCYS "as far as anything that's been made possible." *Id.* Father referenced his completion of an anger management program. *Id.* He claimed drug and alcohol counseling was not available in prison "because of Covid and the quarantine." *Id.* at 115. As to mental health treatment, Father stated he "got an evaluation," was "taking medication for anxiety and bi-polar," and "see[s] the psychiatrist once every

six weeks." *Id.* Father also testified that he had participated in every visit with Child "that was made available" to him. *Id.* at 118.

By decree entered June 16, 2022, the trial court terminated Father's parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(2),(5),(8) and (b). Father timely appealed. Father and the trial court have complied with Pa.R.A.P. 1925.[3]

On September 21, 2022, Counsel filed his petition to withdraw with this Court. "When faced with a purported *Anders* brief, this Court may not review the merits of the underlying issues without first passing on the request to withdraw." *Commonwealth v. Rojas*, 874 A.2d 638, 639 (Pa. Super. 2005) (quoting *Commonwealth v. Smith*, 700 A.2d 1301, 1303 (Pa. Super. 1997)); *see also In re V.E.*, 611 A.2d 1267 (Pa. Super. 1992) (extending *Anders* procedure to appeals from involuntary termination decrees).

> To withdraw pursuant to *Anders*, counsel must:
>
> petition the court for leave to withdraw stating that, after making a conscientious examination of the record, counsel has determined that the appeal would be frivolous; 2) furnish a copy of the [*Anders*] brief to the [appellant]; and 3) advise the [appellant] that he or she has the right to retain private counsel or raise additional arguments that the [appellant] deems worthy of the court's attention.

---

[3] After reviewing Father's Rule 1925 concise statement, the trial court stated it "incorporates and adopts the entirety of the June 16, 2022 Opinion and Decree," and "there are no issues which merit an appeal." Statement of Reasoning, 8/4/22.

*Commonwealth v. Cartrette*, 83 A.3d 1030, 1032 (Pa. Super. 2013) (*en banc*) (citing *Commonwealth v. Lilley*, 978 A.2d 995, 997 (Pa. Super. 2009)).

With respect to *Anders*' third requirement that counsel inform appellant of his rights in light of counsel's withdrawal, this Court has held counsel must "attach to their petition to withdraw a copy of the letter sent to their client advising him or her of their rights." *Commonwealth v. Millisock*, 873 A.2d 748, 752 (Pa. Super. 2005).

Additionally, the Pennsylvania Supreme Court has directed that *Anders* briefs must:

> provide a summary of the procedural history and facts, with citations to the record; (2) refer to anything in the record that counsel believes arguably supports the appeal; (3) set forth counsel's conclusion that the appeal is frivolous; and (4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

*Santiago*, 978 A.2d at 361.

Here, Counsel avers in his petition that he conducted a conscientious examination of the record and found the appeal to be wholly frivolous. Counsel also avers he mailed Father a letter explaining his rights and attached a copy of the letter to his petition to withdraw. Counsel's letter complies with the law, as it informs Father he may retain new counsel or proceed *pro se* and raise any additional arguments he deems worthy of our attention.

Counsel's **Anders** brief summarizes the facts and procedural history, includes issues that could arguably support Father's appeal and Counsel's assessment of why the issues are frivolous, with citations to the record and relevant legal authority. Because Counsel has complied with **Anders**, we review the issues presented in his brief. In addition, we "conduct an independent review of the record to discern if there are any additional, non-frivolous issues overlooked by counsel." **Commonwealth v. Flowers**, 113 A.3d 1246, 1250 (Pa. Super. 2015); **see also Commonwealth v. Dempster**, 187 A.3d 266, 272 (Pa. Super. 2018) (*en banc*) (describing our duty as a "simple review of the record to ascertain if there appears ... to be arguably meritorious issues that counsel, intentionally or not, missed or misstated").

Counsel presents the following questions on Father's behalf:

1. Did the trial court err as a matter of law in determining that termination of parental rights of [Father] was in the best interests of the subject minor child?

2. Did the trial court err as a matter of law in determining that Wayne County Children and Youth Services had met its burden of proof in the involuntary termination of parental rights in this matter?

**Anders** Brief at 7.

In reviewing the termination of parental rights,

our standard of review requires [us to] accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. As has been often stated, an

- 7 -

abuse of discretion does not result merely because the reviewing court might have reached a different conclusion. Instead, a decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will.

As [the Supreme Court] discussed in *In re: R.J.T.*, [9 A.3d 1179, 1190 (Pa. 2010)], there are clear reasons for applying an abuse of discretion standard of review in these cases. [U]nlike trial courts, appellate courts are not equipped to make the fact-specific determinations on a cold record, where the trial judges are observing the parties during the relevant hearing and often presiding over numerous other hearings regarding the child and parents. *R.J.T.*, 9 A.3d at 1190. Therefore, even where the facts could support an opposite result, as is often the case in dependency and termination cases, an appellate court must resist the urge to second guess the trial court and impose its own credibility determinations and judgment; instead, we must defer to the trial judges so long as the factual findings are supported by the record and the court's legal conclusions are not the result of an error of law or an abuse of discretion.

*In re Adoption of S.P.*, 47 A.3d 817, 826-27 (Pa. 2012) (some citations omitted).

CYS has the burden to prove by clear and convincing evidence that its asserted grounds for termination are valid. *In re R.N.J.*, 985 A.2d 273, 276 (Pa. Super. 2009). "[T]he standard of clear and convincing evidence is defined as testimony that is so clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." *Id.* Under 23 Pa.C.S.A. § 2511, "the court must engage in a bifurcated process prior to terminating parental rights." *In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007). Initially, the focus is on the conduct of the parent pursuant to Section 2511(a). *Id.*

## Section 2511(a)

With respect to grounds for termination under Section 2511(a), we need only agree "as to any one subsection in order to affirm the termination of parental rights." *In re A.S.*, 11 A.3d 473, 478 (Pa. Super. 2010). Instantly, we address the second subsection, which provides for termination when

> repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

23 Pa.C.S.A. § 2511(a)(2).

Subsection 2511(a)(2) "emphasizes the child's present and future need for 'essential parental care, control or subsistence necessary for his physical or mental well-being.'" *In re E.A.P.*, 944 A.2d 79, 82 (Pa. Super. 2008) (citation omitted). Grounds for termination under subsection (a)(2) are not limited to affirmative misconduct. *Id.* "Where the parent does not exercise reasonable firmness in declining to yield to obstacles, h[is parental] rights may be forfeited." *Id.* at 83. Grounds for termination under § 2511(a)(2) may include acts of refusal as well as incapacity to perform parental duties. *In re S.C.*, 247 A.3d 1097, 1104 (Pa. Super. 2021). We have long recognized that a parent is required to make diligent efforts toward the reasonably prompt assumption of full parental responsibilities. *In re Adoption of M.A.B.*, 166 A.3d 434, 443 (Pa. Super. 2017).

Pertinently, the Pennsylvania Supreme Court has addressed the relevance of incarceration in termination decisions under Section 2511(a)(2) in *In re Adoption of S.P.*, 47 A.3d 817 (Pa. 2012). The Pennsylvania Supreme Court expressly held that "incarceration is a factor, and indeed can be a determinative factor, in a court's conclusion that grounds for termination exist under § 2511(a)(2), where the repeated and continued incapacity of a parent due to incarceration has caused the child to be without essential parental care, control or subsistence and that the causes of the incapacity cannot or will not be remedied." *Id.* at 828 (emphasis added). Our Supreme Court further explained

> incarceration, while not a litmus test for termination, can be determinative of the question of whether a parent is incapable of providing "essential parental care, control or subsistence" and the length of the remaining confinement can be considered as highly relevant to whether "the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent," sufficient to provide grounds for termination pursuant to 23 Pa.C.S. § 2511(a)(2). *See e.g. Adoption of J.J.*, 515 A.2d [883, 891 (Pa. 1986) ] ("[A] parent who is incapable of performing parental duties is just as parentally unfit as one who refuses to perform the duties."); [*In re*] *E.A.P.*, 944 A.2d [79, 85 (Pa. Super. 2008) ] (holding termination under § 2511(a)(2) was supported by mother's repeated incarcerations and failure to be present for child, which caused child to be without essential care and subsistence for most of her life and which cannot be remedied despite mother's compliance with various prison programs).

*In re Adoption of S.P.*, 47 A.3d at 830 (footnote omitted).

As to Section 2511(a), Father claims WCCYS failed to meet its burden of proving grounds for termination by clear and convincing evidence. In contrast, WCCYS asserts the trial court

correctly terminated Father's parental rights where he failed to show any progress in reaching even one of the objectives in the [C]hild's permanency plan over a period of time in excess of 15 months, having only just begun anger management services at the time of the termination hearing[.]

WCCYS Brief at 7. Similarly, Child's counsel states, "Father has failed to work [*sic*] many of the objectives in the plan despite having programs available to him in the jail." Appellee Brief at 8.

The trial court made the following findings:

1. Father attended 6 of 19 total visits offered with [Child].

2. Father was incarcerated at the Sullivan County Correctional Facility from March 15, 2021, to December 15, 2021.

3. Since December 15, 2021, Father has been incarcerated at the Pike County Correctional Facility.

4. There has been minimal interaction between Father and WCCYS.

5. There is no bond between Father and [Child].

Opinion and Decree, 6/16/22, at 3.

The court explained:

As to Father, he has been incarcerated for the majority of [Child's] dependency and remains incarcerated at the Pike County Correctional Facility. Father has made little contact with WCCYS during [Child's] dependency. Father has attended anger management services during his incarceration but has not participated in drug and alcohol services. There has been no bond observed between Father and [Child].

*Id.* at 7. The court concluded Father's "failure to cooperate with WCCYS indicates [Father does not] possess the skillset to care for and nurture" Child.

*Id.*

- 11 -

The record supports the trial court's determination. Caseworker Sarah Mooney testified that Father did not cooperate with the agency prior to being incarcerated. N.T., 6/7/22, at 10. For example, Father was offered 11 visits with Child but only attended one. *Id.* at 15. No visitation was offered from March 15, 2021, to December 15, 2021, when Father was incarcerated in Sullivan County. *Id.* Father was permitted virtual visits after being moved to a correctional facility in Pike County on December 15, 2021. *Id.* At 15-16. In total, when Father was not incarcerated or incarcerated in Pike County, he attended six of 19 — or 32% — of the visits WCCYS offered. *Id.* at 15.

Ms. Mooney testified that Father's overall compliance with his family service plan was minimal. *Id.* at 42. Father attended an anger management program at the Pike County Correctional Facility. *Id.* However, Father did not participate in the individual drug and alcohol program available to him, and "reported that he did not have a substance use problem [and] stated the reason I am here is not due to drugs." *Id.* at 44. Ms. Mooney further testified that Father

> reported he met with the individual mental health counselor once while he was in Sullivan County Jail and once while he was in Pike County Jail. He does have the ability to seek individual mental health services or counseling services while he is incarcerated, however, he has not or I am not aware that he is, … and when I discuss this with [Father] he had reported (inaudible) not like to talk to people.

*Id.* at 44-45. Ms. Mooney reiterated that drug and alcohol, mental health, parenting, and anger management programs were available to Father during

his incarceration. *Id.* at 59. Yet of the four programs, Father only participated in anger management. *Id.* at 59-60. Under the circumstances, Ms. Mooney could not identify a timeframe in which Child could "return home," stating, "it's undetermined." *Id.* at 46.

At the conclusion of the hearing, Child's counsel observed that Child's "case has been pending for nineteen months. She has been in care for sixteen of those." *Id.* at 125. Child's counsel advocated for termination, stating:

> As it relates to [F]ather, the dependency bench book is very clear in what the court should consider when you have an incarcerated parent. All those questions that have been asked here today. His rights can't be terminated simply because he's incarcerated and I don't think that's what [WCCYS] is arguing. I think that if you look at it there's a lot more that could have been done. There's always more that a parent can do while they're incarcerated and I just don't think that we have seen that demonstrated here today. So at this point in time I think it's in [Child's] best interest that [F]ather's parental rights be terminated.

*Id.* at 127.

Consistent with the foregoing, the trial court concluded that Father's incapacity to parent caused Child to be without essential care, and the incapacity cannot or will not be remedied. 23 Pa.C.S.A. § 2511(a)(2). We discern no error.

## Section 2511(b)

Father also claims the trial court erred in terminating his parental rights under Section 2511(b), which requires the trial court "give primary

consideration to the developmental, physical and emotional needs and welfare of the child."

"Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child." ***In re L.M.***, 923 A.2d 505, 511 (Pa. Super. 2007). When the court considers a child's needs and welfare, the "extent of any [parental] bond analysis ... necessarily depends on the circumstances of the particular case." ***In re K.Z.S.***, 946 A.2d 753, 763 (Pa. 2008).

> [I]n addition to a bond examination, the trial court can equally emphasize the safety needs of the child, and should also consider the intangibles, such as the love, comfort, security, and stability the child might have with the foster parent. Additionally, this Court stated that the trial court should consider the importance of continuity of relationships and whether any existing parent-child bond can be severed without detrimental effects on the child.

***In re A.S.***, 11 A.3d at 483 (citations omitted).

> Here, the trial court explained:

> As to the best interests of [Child] under 23 Pa.C.S.A. § 2511(b), WCCYS presented credible evidence that termination of parental rights would best serve [Child's] needs and welfare. Testimony indicated [Child] is bonded with Mother. Testimony also confirmed [Child] is bonded with the family that has been identified to provide permanency for her. The parental obligation is a positive duty that requires affirmative performance. ***In re Z.P.***, 994 A2d 1108, 1119 (Pa. Super. 2010) (citing ***In re B.,N.M.***, 856 A.2d 847, 855 (Pa. Super. 2004)). **Parental rights are not preserved by waiting for a more suitable or convenient time to perform one's parental responsibilities while others**

- 14 -

**provide [for the child's] physical and emotional needs.** *Id.*
(emphasis in original).

\*\*\*

[I]t is in the best interest of [Child] that the parental rights be terminated. This will allow [Child] the permanency she deserves.

Opinion and Decree, 6/16/22, at 7-8.

The record supports the trial court's decision.

[Child] was placed in foster care with [foster parents] multiple times throughout her dependency. She returned to the care of [foster parents] for the third time on February 18, 2022. There is a bond between [Child and foster parents, who are an "adoptive resource"].

*Id.* at 3; *see also* N.T., 6/7/22, at 18, 47 (Ms. Mooney opining that foster parents have an established bond with Child, who is doing well and "adjusted quickly to her return" to foster parents).

Also, while Dr. Tunilo primarily discussed Child's bond with Mother, Dr. Tunilo stated that Child would experience a "second trauma" if removed from her foster family. *Id.* at 82. Dr. Tunilo confirmed it would be detrimental "because [Child] would be losing the bond between her and her foster family and would have to, again, readjust[.]" *Id.* at 83.

We discern no error in the trial court's termination of Father's parental rights under 23 Pa.C.S.A. § 2511(b). Further, our review reveals no arguably meritorious issues Father could raise on appeal. *See Dempster*, 187 A.3d at 272. Accordingly, we grant Counsel's petition to withdraw from

- 15 -

representation, and affirm the termination of Father's parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(2) and (b).

Petition to withdraw granted. Decree affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/29/2022